IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LA VERA C. BROWN,                )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )       1:03CV1238
                                 )
THE INSTITUTE FOR FAMILY         )
CENTERED SERVICES, INC. and      )
PHIL EPSTEIN,                    )
                                 )
    Defendants.                  )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff La Vera C. Brown brings this federal question suit against her former employer, Defendant The Institute for Family Centered Services, Inc. (the "Institute"), and her former supervisor, Defendant Phil Epstein. Plaintiff asserts claims for discriminatory discharge based on race and sex and discriminatory pay practices based on sex, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended; and tortious interference with contract under North Carolina state law. This matter is now before the court on the Institute's motion to dismiss Plaintiff's sex discrimination claims pursuant to Federal Rule of Civil Procedure 12(b)(6), to strike pursuant to Federal Rule of Civil Procedure 12(f), and for

attorneys' fees and costs.  For the reasons set forth herein, the
Institute's motion will be granted in part and denied in part.

**I.   BACKGROUND**

The following facts are presented in the light most
favorable to Plaintiff.[1]

In November 2001, Plaintiff Brown, a black female, began
working as a family counselor and therapist for Defendant
Institute, a Virginia-based family consulting and therapy
business with four offices in North Carolina.  The Institute's
clients with which Plaintiff worked included North Carolina
county governmental agencies, such as Guilford County Mental
Health and Guilford County Department of Social Services.

Approximately six months prior to Plaintiff's employment
with the Institute, Plaintiff and her husband agreed to adopt a
twelve-year-old boy from Guilford County Department of Social
Services.  Shortly after the child moved into Plaintiff's home,
the child began to exhibit serious emotional problems as a result
of past abuse.  The Department of Social Services and other
agencies continued to provide the child with therapy and
counseling services.  Plaintiff's adoption of the child was
finalized in June 2002.

---

[1]  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

In the latter half of 2002, the child's behavior continued to worsen, requiring court intervention, detention of the child, and eventual transition into a group home. By the end of 2002, the child showed no signs of improvement and was continuing to exhibit behavioral problems at school and in the group home. In January 2003, the Department of Social Services, the Guilford Center (Guilford County Area Mental Health), the child's school, and Plaintiff collectively determined the best course of treatment for the adopted child was a return to Department of Social Services custody.

On January 15, 2003, Plaintiff was called into a meeting with Defendant Epstein, Plaintiff's supervisor and the Institute's regional manager. Epstein told Plaintiff she was being placed on suspension without pay because of statements made by employees of the Guardian Ad Litem Program to Epstein indicating Plaintiff was abusing her adopted child. Plaintiff explained to Epstein all of the circumstances surrounding her adopted child and invited Epstein to a state court hearing concerning the child to be held January 31, 2003. Epstein told Plaintiff she would be reinstated after the hearing if the allegations of the Guardian Ad Litem Program were found to be unfounded. Epstein stated he intended to attend the upcoming hearing.

3

Case 1:03-cv-01238-WLO   Document 12   Filed 04/27/05   Page 3 of 12

On January 28, 2003, Epstein had another conversation with employees of the Guardian Ad Litem Program. After the conversation, Epstein decided to terminate Plaintiff's employment. Epstein did not inform Plaintiff of his decision to terminate her at that time.

The state court hearing regarding the adopted child was held on January 31, 2003. Epstein was not present. At the hearing, the state court relieved Plaintiff of all her responsibility concerning the adopted child. The same day, Plaintiff called Epstein, who informed Plaintiff she was terminated effective immediately. Plaintiff later received a letter of termination.

After filing a charge with and obtaining a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff brought a three-count complaint against the Institute and Epstein. Now pending before the court is the Institute's motion to dismiss, to strike, and for attorneys' fees and costs.

**II. STANDARDS OF REVIEW**

A defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") tests the legal sufficiency of the pleadings, but does not seek to resolve disputes surrounding the facts. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The

4

issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The pleading must be liberally construed in the light most favorable to the nonmoving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).

A motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure permits the elimination of an insufficient defense or matter in a pleading that is redundant, immaterial, impertinent, or scandalous in nature. Fed. R. Civ. P. 12(f). The rule requires a moving party to file a motion to strike before responding to the challenged pleading. Id. Motions to strike are viewed with disfavor and are granted only for egregious violations. Farrell v. Pike, 342 F. Supp. 2d 433, 441 (M.D.N.C. 2004). Thus, before a motion to strike will be granted, the allegations must be the type envisioned by the rule and prejudicial. Hare v. Family Pub. Serv., Inc., 342 F. Supp. 678, 685 (D. Md. 1972).

5

Rule 54(d) of the Federal Rules of Civil Procedure allows as a matter of course the recovery of costs, other than attorneys' fees, to the prevailing party. Fed. R. Civ. P. 54(d). As for attorneys' fees, the general rule is that absent legislation providing otherwise, litigants must bear their own fees. <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 260, 95 S. Ct. 1612, 1623 (1975). Title VII contains a provision which allows courts, in their discretion, to award reasonable attorneys' fees to a prevailing party as part of the bill of costs. 42 U.S.C. § 2000e-5(k). The award of attorneys' fees is within the discretion of the court, which may award fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421, 98 S. Ct. 694, 700 (1978); see <u>Arnold v. Burger King Corp.</u>, 719 F.2d 63, 65-66 (4th Cir. 1983).

**III. ANALYSIS**

Plaintiff's three-count complaint alleges two Title VII claims and a claim under North Carolina law. In Count I, Plaintiff alleges race discrimination in that the Institute and Epstein used the false accusations of abuse "as a pretext in order to wrongfully terminate" Plaintiff because of her race. (Compl. ¶ 36.) In Count II, Plaintiff alleges two theories of sex discrimination. First, she asserts she and another female employee were promoted and given additional responsibilities

6

without receiving commensurate salary increases, while a white male employee with less experience and education received a $10,000 annual pay increase for the same promotion. (Id. ¶¶ 40-41.) Second, Plaintiff alleges she was terminated because she was a female. (Id. ¶¶ 44-45.) In Count III, Plaintiff alleges the discriminatory actions of Defendants constitute an interference with her employment contract.

The Institute moves to dismiss only Plaintiff's sex-based Title VII claim, which includes Plaintiff's theories of wrongful termination and discriminatory pay practices. (Br. Supp. Def. Institute's Mot. Dismiss, Mot. Strike, and Mot. Costs at 2.) The Institute contends these claims should be dismissed for failure to exhaust administrative remedies because Plaintiff's EEOC charge does not contain any reference to sex discrimination or discriminatory pay practices based on sex. The Institute also moves to strike from the complaint all references to the sex discrimination claim. Lastly, the Institute moves for prevailing party attorneys' fees and costs because Plaintiff's "sex discrimination claims clearly have no factual or legal basis." (Id. at 5.)

**A. Motion to Dismiss**

Title VII plaintiffs are required to exhaust administrative remedies with the EEOC before filing a complaint in federal court. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC filing limits a plaintiff's right to bring suit by defining the scope of any ensuing lawsuit. King v.

7

Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976). A plaintiff may only maintain in her Title VII lawsuit "those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Where a plaintiff alleges the same theory of recovery but relies on different supporting facts in the subsequent complaint, the complaint is "reasonably related" to the EEOC charge. See, e.g., Smith, 202 F.3d at 248 (holding a retaliation claim based on the company's chastisement and threats of termination was "reasonably related" to a retaliation claim based on the company forcing the plaintiff to continue working with the alleged sexual harasser and refusing her transfer when the claim resulted from management's reaction to her complaints of harassment). When a plaintiff alleges a different theory of recovery in the EEOC filing and in the subsequent lawsuit, the claims are not "reasonably related." See, e.g., Evans, 80 F.3d at 963-64 (holding plaintiff's claims of sexual harassment, pay and benefits discrimination, and age discrimination did not relate to her EEOC filing, which alleged only failure to promote based on sex discrimination); Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (holding claims of discrimination in hiring, training, and promotion were outside the scope of the EEOC filing, which alleged only disparate disciplinary treatment).

Here, Plaintiff's charge of discrimination[2] indicates it is based solely on racially-discriminatory termination. (Def. Institute's Mot. Dismiss, Mot. Strike, and Mot. Costs Ex. A.) Specifically, Plaintiff checked only the box for "race," not "sex" when designating the type of discrimination she faced. (Id.) She indicated January 31, 2003, the date of her termination, as both the earliest and latest date the

---

[2] Both parties support their arguments with extrinsic evidence. The Institute attached to its motion to dismiss Plaintiff's charge of discrimination to show Plaintiff did not exhaust her administrative remedies. In opposition, Plaintiff filed a factual affidavit and the entire EEOC file on her case to explain away the lack of reference to her sex discrimination and discriminatory pay practices claims. In deciding a Rule 12(b)(6) motion, the court may consider the complaint and documents attached to the complaint, referred to in the complaint, and relied upon by Plaintiff in bringing the action. See Abadian v. Lee, 117 F. Supp. 2d 481, 485 (D. Md. 2000) (citing Biospherics, Inc. v. Forbes, Inc., 989 F. Supp. 748, 749 (D. Md. 1997), aff'd, 151 F.3d 180 (4th Cir. 1998)). The court may also consider matters subject to judicial notice. See Fed. R. Evid. 201(b). All other extrinsic evidence, if not excluded by the court, require the court to convert a motion to dismiss into one for summary judgment. See Fed. R. Civ. P. 12(b)(6), 56. Whether to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and, therefore, whether to convert a motion under Rule 12(b)(6) to one under Rule 56, is within the discretion of the court. Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004).

In the present case, the court can consider the charge of discrimination without having the motion to dismiss converted into one for summary judgment. The EEOC charge is referenced in Plaintiff's complaint (see Compl. ¶ 10) and is central to Plaintiff's claim in that Plaintiff must rely on it to establish she has exhausted her administrative remedies. Plaintiff's affidavit and the EEOC file, however, do not fit into one of the aforementioned categories. Therefore, the court, in its discretion, will not convert the Institute's motion to one for summary judgment or consider Plaintiff's extrinsic evidence under the Rule 12(b)(6) standard.

discrimination occurred.  (Id.)  The "continuing action" box was not checked.  Lastly, the narrative of the EEOC charge refers only to discharge on January 31, 2003, "because of [her] race, Black."  (Id.)

Plaintiff's allegations of sex-motivated termination set forth in her complaint are not "reasonably related" to Plaintiff's charge of race-motivated termination because they are based upon a protected class not mentioned in the EEOC charge. See, e.g., Harris v. Maryland House of Corr., 209 F. Supp. 2d 565, 570 (D. Md. 2002) (holding the plaintiff's religious discrimination claim was not related to the race, national origin, age, or sex discrimination claims alleged in her EEOC charge); Caldwell v. ServiceMaster Corp., 966 F. Supp. 33, 49 (D.D.C. 1997) (holding the plaintiff's sex discrimination claim in her lawsuit was not related to the race discrimination claim in the EEOC charge).  Similarly, Plaintiff's claim for discriminatory pay practices is not reasonably related to her charge of wrongful termination because it is based on a different theory of discrimination.  See Zeuner v. Rare Hospitality Int'l, Inc., 338 F. Supp. 2d 626, 646 (M.D.N.C. 2004) (holding the plaintiff's retaliation claim was not related to her EEOC charges of sexual harassment and wrongful termination).  Furthermore, administrative investigation of either sex-based claim could not reasonably be expected to occur in light of Plaintiff's sole charge of racially-motivated termination.  See Byrant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (holding

10

investigation of retaliation, and color and sex discrimination, could not reasonably be expected to occur in light of plaintiff's sole charge of race discrimination). Therefore, because the scope of Plaintiff's complaint exceeds the limits set by the allegations in Plaintiff's EEOC charge, the court must dismiss Plaintiff's sex-based claims for failure to exhaust administrative remedies. These claims will be dismissed without prejudice.

**B. Motion to Strike**

Considering the court's decision under the Rule 12(b)(6) standard, there can be no dispute Plaintiff's sex-based Title VII claims are immaterial. However, striking factual or legal references to a claim does not naturally follow the dismissal of the claim without some independent basis for doing so. The Institute has offered no argument or evidence of prejudice to support this disfavored action. The Institute's motion to strike will be denied.

**C. Motion for Attorneys' Fees and Costs**

Unlike a Rule 12(b)(6) motion, the court is not limited in the material to be considered when ruling on a motion for attorneys' fees and costs. Considering Plaintiff's affidavit, in which she stated under oath that she mentioned her sex-based Title VII claims to various EEOC employees, the court cannot find Plaintiff's sex-based claims frivolous, unreasonable, or without foundation so as to satisfy the <u>Christiansburg</u> standard. Furthermore, taking into account the court's dismissal of these

11

claims without prejudice, a bill of fees and costs is inappropriate at this time. The Institute's motion for attorneys' fees and costs will be denied.

**IV. CONCLUSION**

For the reasons stated herein,

IT IS ORDERED that Defendant The Institute for Family Centered Services, Inc.'s Motion to Dismiss, Motion to Strike, and Motion for Costs [5] is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiff's sex-based wrongful termination and discriminatory pay practices claims is GRANTED. Plaintiff's claims are dismissed without prejudice. Defendant's motions to strike and for costs are hereby DENIED.

This the 27th day of April 2005.

_____
United States District Judge